1
2
3
4

**REESE LLP**
Michael R. Reese (Cal. State Bar No. 206773)
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Email: *mreese@reesellp.com*

5
6
7
8

**REESE LLP**
George V. Granade (Cal. State Bar No. 316050)
8484 Wilshire Boulevard, Suite 515
Los Angeles, California 90211
Telephone: (310) 393-0070
Email: *ggranade@reesellp.com*

9
10
11
12

**SHEEHAN & ASSOCIATES, P.C.**
Spencer Sheehan
505 Northern Blvd Ste 311
Great Neck, New York 11021-5101
Telephone: (516) 303-0552
Email: *spencer@spencersheehan.com*

13

14

*Attorneys for Plaintiff and the Proposed Class*

15

16

17

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| STEVE DAILEY, on behalf of himself and all others similarly situated, | Case No.: 20-cv-2732 |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| vs. | (1) Cal. Bus. & Prof. Code § 17200 *et seq.*; |
| A & W CONCENTRATE COMPANY and KEURIG DR PEPPER INC. | (2) Cal. Bus. & Prof. Code § 17500, *et seq.*; and |
| Defendants | (3) Cal. Civ. Code §1750 *et seq.* |
| | **Demand for Jury Trial** |

18
19
20
21
22
23
24
25
26
27
28

Plaintiffs Steve Dailey ("Plaintiff"), by his undersigned attorneys alleges upon information and belief, except for allegations pertaining to Plaintiff, which are based on personal knowledge:

## **INTRODUCTION**

1.      A & W Concentrate Company and Keurig Dr Pepper Inc. ("Defendants") manufacture, market, distribute, bottle and sell "root beer" and "cream soda" carbonated soft drinks under the A & W brand ("Products").  Defendants prominently state "Made With Aged Vanilla" on their Products' labels.

2.      The Products are sold in different size plastic and glass bottles and aluminum cans, in sizes such as 12 oz, 20 oz and 2 liters (67.6 oz).  The Products are sold to consumers in individual bottles or cans or in cases from brick-and-mortar stores and online by third-parties. All Products, regardless of size or distribution channel, bear the common, uniform representation "Made with Aged Vanilla."

3.      Consumers interpret the "Made with Aged Vanilla" representation to mean that vanilla is a characterizing flavor of the Products.  Indeed, in a survey of four hundred and eleven (411) consumers conducted in March of 2020, no less than 89% of the consumers stated that the "Made With Aged Vanilla" meant that the product was vanilla flavored.

4.      Consumers also interpret the "Made with Aged Vanilla" representation to mean that the vanilla flavor comes exclusively (if not predominantly) from the vanilla plant.  Indeed, in the March 2020 survey of four hundred and eleven (411) consumers, no less than 68% of those consumers believed that the "Made With Aged Vanilla" representation meant the vanilla flavor "comes from a vanilla plant, such as vanilla extract, which is made from vanilla beans from the vanilla plant."

CLASS ACTION COMPLAINT

5. Unfortunately for consumers, the "Made With Aged Vanilla" representation is false and misleading. Specifically, scientific testing by Alliance Technologies in August of 2019 of the Products has revealed that the vanilla flavoring of the Products does not come exclusively or predominantly from the vanilla plant. Rather, the opposite is true as the testing has revealed that the predominant, if not exclusive, source of the vanilla flavor is from ethyl vanillin.

6. Ethyl vanillin <u>does not</u> come from the vanilla plant at all. Instead, it is an artificial, synthetic ingredient that is used as a cheap, inferior substitute for vanilla. *See* 21 C.F.R. § 182.60 (listing ethyl vanillin as a one of several "[s]ynthetic flavoring substances and adjuvants").

7. Plaintiff now brings this action to stop Defendants' misrepresentation and recover the monies they paid for the Products as a result of the misrepresentation, as well as statutory damages and the other relief detailed below.

## HISTORIC BACKGROUND OF ROOT BEER AND CREAM SODA

8. Root beer and cream soda are inextricably linked through their association with the coffee shops of their era – the luncheonette – and their principal flavoring component – vanilla.

9. Until the bottling industry matured to enable mass production, sodas were commonly handmade and dispensed at the soda fountain, a staple of every lunch counter, whether in a pharmacy, five-and-dime store or department store.

10. Though it is unknown who pioneered the idea of adding ice cream to carbonated water the "original" ice cream soda relied on the most popular flavor of ice cream – vanilla – as the "cream" in the "cream soda" name. Thus, the "cream" flavor provided by cream soda was derived from vanilla.

11. These delicacies were served up by the baristas of their day – "soda jerks" – who took pride in their craft which was documented in detail.[1]

---

[1] *Standard Manual of Soda and Other Beverages*, 1897.

**BACKGROUND ON THE VANILLA PLANT AND VANILLA FLAVORING**

12.     Vanilla (*Vanilla planifolia Andrews* and *Vanilla tahitenis Moore*) comes from an orchid plant that originated in Mexico where it was first cultivated.  The vanilla orchid produces a fruit pod, the vanilla bean, which is the raw material for true vanilla flavorings.

13.     The vanilla bean is not consumed by itself.  It is necessary to scrape the seed from the pod, infuse it, or extract it. Vanilla extracts are considered the product type most equivalent to vanilla and are defined by regulations as solution in aqueous ethyl alcohol of the sapid and odorous principles extractible from vanilla beans. 21 C.F.R. § 169.175 ("Vanilla extract.")

14.     Various commercial products are derived from the vanilla plant including extracts.

15.     Ethyl alcohol content of such an extract is not less than 35% by volume, and the extractible matter of one or more units of vanilla constituent.

16.     A unit of vanilla constituent is 13.35 ounces of beans containing not more than 25% moisture per gallon of finished extract, resulting in extractible matter of not less than 10.0125 ounces of beans on the moisture-free basis.

17.     Vanilla flavoring is similar to vanilla extract but contains less than 35% ethyl alcohol by volume.

1

## **DEFENDANTS' MISLEADING "MADE WITH AGED VANILLA" PRODUCTS**

2

18.    Defendants prominently make the claim "MADE FROM AGED VANILLA" on

3

the front label panel of the Products, thereby cultivating a wholesome and natural image in an

4

effort to promote the sale of the Products:

5

6

7

8

9

10

11



12

13

14

15

16

17

18

19

 

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13



14
15      19.     Consumers interpret the "Made with Aged Vanilla" representation to mean that
16  vanilla is a characterizing flavor of the Products.  Indeed, in a survey of four hundred and eleven
17  (411) consumers conducted in March of 2020, no less than 89% of the consumers stated that the
18  "Made With Aged Vanilla" meant that the Product were vanilla flavored.

        20.     Consumers also interpret the "Made with Aged Vanilla" representation to mean
19  that the vanilla flavor comes exclusively (if not predominantly) from the vanilla plant.  Indeed,
20  in the March 2020 survey of four hundred and eleven (411) consumers, no less than 68% of
21  those consumers believed that the "Made With Aged Vanilla" representation on Defendants'
22  Products meant the vanilla flavor in the Products "comes from a vanilla plant, such as vanilla
23  extract, which is made from vanilla beans from the vanilla plant."

24      21.     Unfortunately for consumers, the "Made With Aged Vanilla" representation is
25  false and misleading.  Specifically, scientific testing of the products in August of 2019 by
26  Alliance Technologies revealed that the vanilla flavoring of the Products does not come
27  exclusively from the vanilla plant.  Rather, the opposite is true as the testing has revealed that the
28

main, if not exclusive, source of the characterizing vanilla flavor is from ethyl vanillin.  Ethyl vanillin <u>does not</u> come from the vanilla plant at all, but rather is an artificial, synthetic ingredient that is used as a cheap, inferior substitute for vanilla.  The result is a labeling scheme that is designed to mislead consumers, and which does so effectively in violation of the consumer protection laws at issue here.

22.     Furthermore, because vanillin, the main flavor compound in vanilla, has the same chemical profile whether obtained from vanilla beans or produced synthetically, the detection of the following four marker compounds in the following ratio is used for authenticating real vanilla.

| Compounds | Percent Present in Vanilla Beans |
|---|---|
| vanillin | 1.3-1.7 % |
| p-hydroxybenzaldehyde | 0.1% |
| vanillic acid | 0.05% |
| p-hydroxybenzoic acid | 0.03% |

23.     Notably, the scientific testing by Alliance Technologies does not indicate the presence of p-hydroxybenzaldehyde, p-hydroxybenzoic acid and vanillic acid. This evidences that if Defendants are using vanillin, it is not real vanilla from the vanilla plant.

24.     Given the total absence of the non-vanillin marker compounds and the high level of ethyl vanillin, *if* any real vanilla is used, it is in trace or *de minimis* amounts not detectable in the Products as sold to consumers by advanced scientific means.  This is deceptive, as reasonable consumers interpret the "Made With Aged Vanilla" on Defendants' Products to mean that the vanilla flavoring in the Products comes exclusively from the vanilla plant.

## DEFENDANTS' LABELING OF THE PRODUCTS ALSO VIOLATES  FOOD AND DRUG ADMINISTRATION REGULATIONS

25.     Section 401 of the Federal Food, Drug and Cosmetic Act ("FFDCA") directs the Food and Drug Administration ("FDA") to establish standards and rules for food labeling where necessary to promote honesty and fair dealing in the interest of consumers.  The authority granted by Congress to the FDA enables the agency to combat an economic problem:  the marketing of foods from which traditional constituents were removed or in which new or different (often cheaper and artificial) ingredients were substituted.  As such, the federal food standards are not safety standards, but rather, as the FDA explains, intended to "protect consumers from contaminated products and economic fraud" and have served as "a trusted barrier against substandard and fraudulently packaged food since their enactment in the 1938 FFDCA."

26.     Consumers want the vanilla in vanilla flavored products to come from a real source, *i.e.,* from vanilla beans from the vanilla plant.  Unfortunately, as in this case, companies adulterate their purported vanilla flavored products with cheap synthetics and substitutes such as ethyl vanillin – a substance manufactured in factories from synthetics and not from vanilla beans – in order to reap even larger corporate profits from consumers.  As a result, vanilla fraud is rampant.

27.     In order to combat this vanilla fraud, the FDA has strict rules regarding use of the term "vanilla" on the labels of food products.  Specifically, only vanilla flavor derived from the vanilla bean is allowed to labelled "Vanilla" without any qualifiers.  If the vanilla flavor comes in any part from non-vanilla bean sources, the FDA mandates that the label must so inform consumers.  Sources of vanilla flavor, which are not from the vanilla bean but still considered "natural," are allowed to be called "Vanilla Flavored" or "Natural Vanilla Flavor."  *See* 21 U.S.C. 101.22 (h)(7)(i)(1)(i)-(iii).  This include non-vanilla bean "natural sources" of vanilla such as ferulic acid or wood pulp (referred to as lignin).

28.     If the vanilla flavoring comes from any synthetic source, such as ethyl vanillin (as it does with the Products here), the label must state either "Artificial Vanilla" or "Artificially

Flavored Vanilla," or "Vanilla Artificially Flavored."  *See* 21 C.F.R.101.22(h)(7)(i)(2) ("the name of the characterizing flavor shall be accompanied by the word(s) 'artificial' or 'artificially flavored,' in letters not less than one-half the height of the letters in the name of the characterizing flavor, e.g., 'artificial vanilla,' 'artificially flavored strawberry,' or 'grape artificially flavored').

29.    The labeling of Defendants' Products violates this regulation because it states "Made With Aged Vanilla."  In order to comply with FDA regulations, Defendants should state either "Made With Artificial Aged Vanilla" or "Made With Artificially Aged Vanilla" or not make the representation at all.  This violation of the FDA's regulations provides a separate and independent reason why Defendants have violated the consumer protection laws at issue here as detailed below.

30.    The FDA regulations regarding vanilla flavoring effectively establish custom and practice in the industry so that consumers can rely on food labeling that make vanilla claims such as those here that the vanilla flavor from the vanilla plant.

31.    To the extent the Products disclose the presence of natural and artificial flavors, this is in addition to the claims that the Products are "Made with Aged Vanilla."  Thus, the "Naturally and Artificially Flavored" statement suggests to consumers that it pertains to flavors in the Products other than vanilla.  Consumers reasonably believe that the "Made with Aged Vanilla" means that, at least with respect to the vanilla flavor, the flavor is a natural flavor that comes from the vanilla plant.

32.    The FDA also has a general prohibition on misleading labeling.  *See*  21 U.S.C. § 343(a).  Defendants also violate that here.

33.    Defendants also violate numerous other sections of the FFDCA, including, but not limited to 21 U.S.C. §§ 343(c) and (f).

## **CONSUMERS HAVE BEEN INJURED**

34.    Excluding tax, the Products cost no less than $1.99 per 12 oz, a premium price compared to other similar products.

1

## JURISDICTION ANDVENUE

2      35.    Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d)(2).

3      36.    Upon information and belief, the aggregate amount in controversy is more than

4  $5,000,000.00, exclusive of interests and costs.

5      37.    This court has personal jurisdiction over Defendants because they conduct and

6  transact business within California and contract to supply and supplies goods within California.

7      38.    Venue is proper because Plaintiff and many class members reside in this District

8  and Defendants do business in this District and in California.

9      39.    A substantial part of events and omissions giving rise to the claims occurred in

10  this District.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT

**PARTIES**

40.     Plaintiff Steve Bailey is a resident of Clearlake, California.  Plaintiff purchased Defendants' Root Beer and Cream Soda Products from retail in California in 2019 because he saw the Products' labeling that stated "Made With Aged Vanilla."  Plaintiff relied on Defendants' false, misleading, and deceptive "Made With Aged Vanilla" representation about the Products to believe that a characterizing flavor of the Products was vanilla and that the vanilla flavor came from the vanilla plant.  Had Plaintiff known the truth – that the "Made With Aged Vanilla" representation relied upon in making the purchase was false, misleading, or deceptive – Plaintiff would not have purchased the Products at a premium price.  If the Products were reformulated such that the vanilla flavor came exclusively from the vanilla plant, or the Products were not deceptively labeled, Plaintiff would purchase the Products again in the future. Plaintiff brings the claims seeking damages, actual and statutory, as well as injunctive relief.

41.     Defendant A & W Concentrate Company is a Delaware corporation with a principal place of business in Plano, Texas.

42.     Defendant Keurig Dr Pepper Inc. is a Delaware corporation with a principal place of business in Burlington, Massachusetts.


**RULE 9(b) ALLEGATIONS**

43.     Federal Rule of Civil Procedure ("Rule") 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  To the extent necessary, as detailed in the paragraphs above and below, Plaintiff has satisfied the requirements of Rule 9(b) by establishing the following elements with sufficient particularity:

44.     WHO:  Defendant made material misrepresentations and omissions of fact in the labeling of the Products.

45.     WHAT:  Defendant made material misrepresentations and omissions by affixing the "Made With Aged Vanilla" on the Products labels in order to lead consumers to believe that the vanilla flavoring in the Products came from real vanilla – *i.e.* the vanilla plant.  This is false

and misleading because at least some, if not all, of the vanilla flavoring come from artificial, non-vanilla plant sources, specifically ethyl vanillin.

46.     WHEN: Defendants made the material misrepresentations and omissions detailed herein continuously throughout the Class Period.

47.     WHERE:  Defendants' material misrepresentations and omissions were made, inter alia, on the labeling and packaging of the Products.

48.     HOW:  Defendants made written misrepresentations on the labeling and packaging of the Products.

49.     WHY:  Defendants engaged in the material misrepresentations detailed herein for the express purpose of inducing Plaintiff and other reasonable consumers to purchase and/or pay a premium for Defendant's products.  Defendants profited by selling the products to tens of thousands of unsuspecting California consumers.

## CLASS ALLEGATIONS

50.     Plaintiff brings this action individually and on behalf of the following Class pursuant to Rule 23(a) and 23(b)(2) and (3) of the Federal Rules of Civil Procedure:

> All persons who purchased any of Defendant's Products bearing from April 21, 2016 to the date of class certification ("the Class").  Excluded from the Class are officers and directors of the Defendants, members of the immediate families of the officers and directors of the Defendants, and their legal representatives, heirs, successors or assigns and any entity in which they have or have had a controlling interest.

51.     This action is brought and may properly be maintained as a class action pursuant to Federal Rule of Civil Procedure 23. This action satisfies the numerosity, typicality, adequacy, predominance, and superiority requirements of those provisions. The Class is so numerous that the individual joinder of all of its members is impracticable.  Due to the nature of the trade and commerce involved, Plaintiff believes that the total number of Class members is in the tens of thousands and that members of the Class are geographically dispersed across California.  While the exact number and identities of the Class members are unknown at this time, such information can be ascertained through appropriate investigation and discovery.

52.    Common questions of law and fact exist as to all members of the Class, and these common questions predominate over any questions affecting only individual members of the Class.  These common legal and factual questions, which do not vary from Class member to Class member, and which may be determined without reference to the individual circumstances of any Class member include, but are not limited to, the following:

    (a)    Whether Defendants labeled, marketed, advertised and/or sold the Products to Plaintiff and those similarly situated using false, misleading and/or deceptive statements or representations;

    (b)    Whether Defendants misrepresented material facts in connection with the sales of its Products;

    (c)    Whether Defendants participated in and pursued the common course of conduct complained of herein; and

    (d)    Whether Defendants' labeling of its Products with the representation "Made With Aged Vanilla" constitute an unfair or deceptive consumer sales practice.

53.    Plaintiff's claims are typical of those of the Class because Plaintiff, like all members of the Class, purchased a Product bearing the "Made With Aged Vanilla" representation on the labels in a typical consumer setting and sustained damages from Defendants' wrongful conduct.

54.    Plaintiff will fairly and adequately protect the interests of the Class and has retained counsel who are experienced in litigating complex class actions.  Plaintiff has no interests that conflict with those of the Class.

55.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Individual joinder of all members of the Class is impracticable.  Even if individual members of the Class had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed.  Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies engendered by Defendants' common course of conduct.  The class

action device allows a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and efficient handling of all Class members' claims in a single forum. The conduct of this action as a class action conserves the resources of the parties and of the judicial system and protects the rights of the Class.  Furthermore, for many, if not most, a class action is the only feasible mechanism that allows an opportunity for legal redress and justice.

56.     This action is maintainable as a class action under Federal Rule of Civil Procedure 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief respecting the class as a whole.

57.     This action is maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3) because the common questions of law and fact identified above, without limitation,  predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

# CAUSES OF ACTION

## FIRST CAUSE OF ACTION

**(Unfair Competition Law, Business and Professions Code § 17200, *et seq.*)**

**On Behalf of Plaintiff and the Class**

58.     Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

59.     As set forth above, the "Made With Aged Vanilla" labeling is false, deceptive and misleading, causing consumers to believe that the vanilla flavoring in Defendants' Products came exclusively from the vanilla plant, when, in fact, that was not true.

60.     Defendants designed the false, misleading and deceptive "Made With Aged Vanilla" label with the intent to sell, distribute and increase the consumption of its Products.

61.     Defendants' violation constitutes unlawful, unfair, and/or fraudulent business acts and practices, which caused Plaintiff and Class members to suffer pecuniary loss.  Specifically, Defendants' false, deceptive and misleading "Made With Aged Vanilla" label caused consumers to purchase Defendant's Products, believing the vanilla flavoring came exclusively from the vanilla plant, when in fact it did not.

62.     In this regard, Defendants' manufacturing, marketing, advertising, packaging, labeling, distributing and selling products bearing the "Made With Aged Vanilla" label violates California's Business and Professions Code.

63.     The business acts and practices alleged above are unlawful under the Consumers Legal Remedy Act, Cal. Civ. Code §1750, et seq. ("CLRA"), which forbids deceptive advertising.

64.     The business acts and practices alleged above are unlawful under §17200, *et seq.* by virtue of violating §17500, *et seq.*, which forbids untrue advertising and misleading advertising.

65.     The business acts and practices also are unlawful for violating 21 U.S.C. §101.22 and 21 U.S.C. §343.

66.     As a result of the business acts practices described above, Plaintiff and the Class,

pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future conduct on the part of the Defendants and such other orders and judgments which may be necessary to disgorge Defendants' ill-gotten gains and to restore to any person in interest any money paid for products bearing the "Made With Aged Vanilla" label as a result of the wrongful conduct of the Defendants.

67.    The above-described unlawful business acts and practices of the Defendants present a threat and reasonable likelihood of deception to Plaintiff and members of the Class in that Defendants has systematically perpetrated and continues to perpetrate such acts or practices upon members of the Class by means of its misleading manufacturing, marketing, advertising, packaging, labeling, distributing and selling of products bearing the "Made With Aged Vanilla" label.

68.    THEREFORE, Plaintiff prays for relief as set forth below.

**SECOND CAUSE OF ACTION**

**(False Advertising Law, Business and Professions Code § 17500, *et seq*.)**

**On Behalf of Plaintiff and the Class**

69.    Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

70.    Plaintiff asserts this cause of action against Defendants for violations of California Business and Professions Code §17500, *et seq.* for misleading, deceptive and untrue advertising.

71.    At all material times, the Defendants engaged in a scheme of offering its products bearing "Made With Aged Vanilla" label for sale to Plaintiff and other members of the Class by way of, *inter alia*, commercial marketing and advertising, product packaging and labeling and other promotional materials.  These materials misrepresented and/or omitted the true nature and quality of "Made With Aged Vanilla" Products. Said advertisements and inducements were made within the State of California and come within the definition of advertising as contained in Business and Professions Code §17500, *et seq.*, in that such promotional materials were intended

as inducements to purchase products bearing the "Made With Aged Vanilla" labels and are statements disseminated by the Defendants to Plaintiff and the Class and were intended to reach members of the Class. Defendants knew, or in the exercise of reasonable care should have known, that these statements were misleading and deceptive.

72. In furtherance of said plan and scheme, Defendants have prepared and distributed within the State of California via commercial marketing and advertising, product packaging and labeling, and other promotional materials, statements that misleadingly and deceptively represent that vanilla flavoring in the Products came exclusively from the vanilla plant, when, in fact, that was not true. Consumers, including Plaintiff, necessarily and reasonably relied on these materials, believing the Products bearing the "Made With Aged Vanilla" label had vanilla flavor that came exclusively from the vanilla plant – which, is untrue as ethyl vanillin is in the Products. Consumers, including Plaintiff and the Class, were among the intended targets of such representations.

73. The above acts of the Defendants, in disseminating said misleading and deceptive statements throughout the State of California to consumers, including Plaintiff and members of the Class, were and are likely to deceive reasonable consumers, including Plaintiff and other members of the Class, by obfuscating the true nature and quality of the Products, all in violation of the "misleading prong" and "untrue prong" of California Business and Professions Code § 17500.

74. As a result of the above violations of the "misleading prong" and "untrue prong" of Business and Professions Code § 17500, *et seq.*, Defendants have been unjustly enriched at the expense of Plaintiff and the other members of the Class. Plaintiff and the Class, pursuant to Business and Professions Code § 17535, are entitled to an order of this Court enjoining such future conduct on the part of the Defendants, and such other orders and judgments which may be necessary to disgorge Defendants' ill-gotten gains and restore to any person in interest any money paid for products bearing the "Made With Aged Vanilla" label as a result of the wrongful conduct of the Defendants.

75. THEREFORE, Plaintiff prays for relief as set forth below.

## **THIRD CAUSE OF ACTION**

**(Consumers Legal Remedies Act - Cal. Civ. Code §1750, *et seq.*)**

**On Behalf of Plaintiff and the Class**

**(Injunctive Relief Only)**

76.     Plaintiff realleges and incorporates by reference the paragraphs stated above in this Class Action Complaint as set forth herein.

77.     This cause of action is brought pursuant to the CLRA, Cal. Civ. Code §1750, *et seq.*

78.     Defendants' actions, representations and conduct have violated and continue to violate the CLRA, as they extend to transactions that are intended to result, or which have resulted, in the sale of lease of goods or services to consumers.

79.     Plaintiff and other Class Members are "consumers" as that term is defined by the CLRA in Cal. Civ. Code §1761(d).

80.     The products bearing the "Made With Aged Vanilla" label that Plaintiff and other members of the Class purchased from Defendant were "goods" within the meaning of Cal. Civ. Code §1761(a).

81.     By engaging in the actions, misrepresentations and misconduct set forth in this Class Action Complaint, Defendants have violated, and continues to violate Section 1770(a)(2), which prohibits representing that goods have a particular composition or contents that they do not have;

82.     By engaging in the actions, misrepresentations and misconduct set forth in this Class Action Complaint, Defendants have violated, and continues to violate Section 1770(a)(5), which prohibits representing that goods have characteristics, uses, benefits or ingredients that they do not have;

83.     By engaging in the actions, misrepresentations and misconduct set forth in this Class Action Complaint, Defendants have violated, and continues to violate, §1770(a)(7) of the CLRA.  Specifically, in violation of Cal. Civ. Code § 1770(a)(7), Defendants' acts and practices constitute unfair methods of competition and unfair or fraudulent acts or practices in that they

misrepresent the particular standard, quality or grade of the goods.

84.     By engaging in the actions, misrepresentations and misconduct set forth in this Class Action Complaint, Defendant has violated, and continues to violate, §1770(a)(16) of the CLRA. Specifically, in violation of Cal. Civ. Code §1770(a)(16), Defendants' acts and practices constitute unfair methods of competition and unfair or fraudulent acts or practices in that they represent that a subject of a transaction has been supplied in accordance with a previous representation when they have not.

85.     Plaintiff requests that this Court enjoin the Defendants from continuing to employ the unlawful methods, acts and practices alleged herein pursuant to Cal. Civ. Code §1780.  If Defendants are not restrained from engaging in these types of practices in the future, Plaintiff and other members of the Class will continue to suffer harm.

86.     Plaintiff only seeks injunctive relief at this point for violation of the CLRA. Plaintiff will provide Defendants with preliminary notice of this lawsuit and provided Defendants with an opportunity to cure the conduct alleged herein at least thirty days prior to filing this lawsuit in accordance with Cal. Civ. Code § 1782.  If Defendants refuse to correct or remedy the unlawful conduct and continue to engage therein after receiving such notice, Plaintiff will amend to also seeks damages pursuant Cal. Civ. Code § 1780(a)(1).

87.     THEREFORE, Plaintiff prays for relief as set forth below.

**PRAYER FOR RELIEF**

THEREFORE, Plaintiff prays for judgment as follows:

1.      Certification of the Class, certifying Plaintiff as representative of the Class, and designating Plaintiff's counsel as counsel for the Class;

2.      A declaration that Defendants have committed the violations alleged herein;

3.      For restitution and disgorgement pursuant to, without limitation, the California Business & Professions Code §§ 17200, *et seq.* and 17500, *et seq*;

4.      For declaratory and injunctive relief pursuant to, without limitation, the California Business & Professions Code §§ 17200, *et seq.* and 17500, *et seq.*;

5.      For only declaratory and injunctive relief pursuant to California Civil Code § 1780 (though Plaintiff will amend to seek damages if Defendants do not comply with the CLRA notice to be provided pursuant to California Civil Code § 1782);

6.      An award of compensatory damages, the amount of which is to be  determined at trial;

7.      For punitive damages;

8.      For interest at the legal rate on the foregoing sums;

9       For attorneys' fees;

10.     For costs of suit incurred; and

11.     For such further relief as this Court may deem just and proper.

1

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury of all claims and causes of action so triable in this lawsuit.

Dated: April 20, 2020          **REESE LLP**

_/s/ Michael R. Reese_
Michael R. Reese
100 West 93rd Street
New York, New York 10001
Telephone: (212) 643-0500
Facsimile: (212) 253-4272
Email: _mreese@reesellp.com_

**REESE LLP**
George V. Granade (Cal. State Bar No. 316050)
8484 Wilshire Boulevard, Suite 515
Los Angeles, California 90211
Telephone: (310) 393-0070
Email: _ggranade@reesellp.com_

**SHEEHAN & ASSOCIATES, P.C.**
Spencer Sheehan
505 Northern Blvd Ste 311
Great Neck, New York 11021-5101
Telephone: (516) 303-0552
Email: _spencer@spencersheehan.com_

_Counsel for Plaintiff and the Class_

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**AFFIDAVIT OF MICHAEL R. REESE**

**PURSUANT TO CALIFORNIA CIVIL CODE § 1780**

Michael R. Reese declares:

1.      I am an attorney duly admitted to practice before this Court.  I am a partner in the law firm of Reese LLP, attorneys of record for Plaintiff Steve Dailey.

2.      I am one of the attorneys principally responsible for the handling of this matter.  I am personally familiar with the facts set forth in this declaration, and if called as a witness, I could and would competently testify to the matters stated herein.

3.      This action has been commenced in a county described in California Civil Code section 1780 as a proper place for the trial of the action.  The transactions or a substantial portion thereof occurred in Lake County, California.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on April 20, 2020, at New York, New York

*/s/ Michael R. Reese*
Michael R. Reese

CLASS ACTION COMPLAINT